IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 16-cv-00249-PAB-CBS

JOSE BLANCO, on behalf of himself and all similarly situated persons,

    Plaintiff,

v.

XTREME DRILLING AND COIL SERVICES, INC., a Texas corporation,

    Defendant.

**ORDER**

This matter is before the Court on Defendant Xtreme Drilling and Coil Services, Inc.'s Motion for Partial Summary Judgment [Docket No. 17]. Defendant seeks summary judgment that it is not subject to the Colorado Minimum Wage Order ("Wage Order"), 7 Colo. Code Regs. § 1103-1:1 *et seq*. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

**I. BACKGROUND**

The case arises out of a wage and hour dispute. Plaintiff contends that defendant failed to pay him overtime wages required under the Wage Order. *See* Docket No. 1 at 2-3, ¶ 7.

Defendant is in the oil and gas industry. Statement of Undisputed Material Facts ("SUMF") 10, Docket No. 17 at 3, ¶ 10. Defendant provides drilling services to oil and natural gas exploration companies. SUMF 2-3, Docket No. 17 at 2, ¶¶ 2-3. Defendant owns the drilling rigs that it uses to provide such services. SUMF 16, Docket No. 17 at

3, ¶ 16.

Plaintiff is a former employee of defendant. Docket No. 7 at 2, ¶ 2. He states in his declaration that he worked in various manual labor jobs where he "helped set up, maintain and operate Xtreme's drilling rigs as well as breaking down the equipment at the end of jobs." Docket No. 18-1 at 1, ¶ 2.[1] Plaintiff states that his duties included "cleaning the rig, tightening its parts and pipes and refilling drilling mud." *Id.*, ¶ 3.

## II. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."

---

[1] Defendant does not contest any of these statements in its reply. *See* Docket No. 20.

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (internal quotation marks omitted)). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115 (citation omitted). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

### III. ANALYSIS

The Wage Order "regulates wages, hours, working conditions and procedures for certain employers and employees" in four "industries":

    (A) Retail and Service
    (B) Commercial Support Service
    (C) Food and Beverage
    (D) Health and Medical.

7 Colo. Code Regs. § 1103-1:1. The parties' dispute is focused on whether defendant is in the "Commercial Support Service" industry. The Wage Order defines this industry to include "any business or enterprise engaged directly or indirectly in providing services to other commercial firms through the use of service employees who perform

duties such as: clerical, keypunching, janitorial, laundry or dry cleaning, security, building or plant maintenance, parking attendants, equipment operations, landscaping and grounds maintenance." 7 Colo. Code Regs. § 1103-1:2(B).  The Wage Order "is remedial in nature and its coverage should be liberally construed." *Bowe v. SMC Elec. Prods., Inc.*, 945 F. Supp. 1482, 1484 (D. Colo. 1996).

Under Colorado law, the "primary objective of statutory construction 'is to effectuate the intent of the General Assembly by looking to the plain meaning of the language used, considered within the context of the statute as a whole.'" *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1143 (10th Cir. 2011) (quoting *Bly v. Story*, 241 P.3d 529, 533 (Colo. 2010)) ("*Butterball*").[2]  "If the language is ambiguous, Colorado courts look beyond that language 'for other evidence of legislative intent and purpose, such as legislative history or other rules of statutory construction.'" *Id*. at 1143-44 (quoting *Crandall v. City and Cty. of Denver*, 238 P.3d 659, 662 (Colo. 2010)).  In construing particular terms, Colorado courts "consider the context of the term at issue and construe it consistently with other terms in the statutory framework." *Boulder Cty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo. 2011).

Defendant argues it is not subject to the Wage Order because it is not in the Commercial Support Service industry.  In defendant's view, what makes Commercial Support Service a distinct industry "is that such businesses use service employees to

---

[2] Colorado courts construe regulations by applying the same principles used to construe statutes. *Rags Over the Arkansas River, Inc. v. Colorado Parks & Wildlife Bd.*, 360 P.3d 186, 192, *as modified on denial of reh'g* (Colo. App. Mar. 26, 2015), *cert. denied sub nom. Rags Over the Arkansas River, Inc. v. Colorado Dep't of Nat. Res.*, 2015 WL 6445387 (Colo. Oct. 26, 2015).

support the day-to-day operations of other firms across all sectors of the economy." Docket No. 17 at 8. Defendant argues that its operations are limited to the oil and gas sector and the "companies with which Xtreme contracts do not have the capability of performing the services that Xtreme provides utilizing their own employees." *Id*. at 10. Defendant also argues that its employees' operations of the drilling equipment do not make them "equipment operators" under the Wage Order. 7 Colo. Code Regs. § 1103-1:2. Defendant claims that "Xtreme's employees do not operate any equipment for Xtreme's customers, but instead perform specific drilling services utilizing Xtreme's own drilling rigs." Docket No. 17 at 11. Defendant analogizes its services to those performed in the construction industry, which are listed as excluded from the Wage Order in the "Fact Sheet" issued by the Colorado Department of Labor and Employment's Division of Labor ("Department of Labor"). Docket No. 17-2.

Plaintiff responds that defendant improperly seeks to read additional constraints into the Wage Order by limiting Commercial Support Services to employees who (1) perform tasks that could be performed by employees of the supported company and (2) support firms in multiple industries. Docket No. 18 at 6. Plaintiff analogizes the services he performed to those performed by landscaping companies, which are subject to the Wage Order. *Id*. at 6-7. Plaintiff also argues that it would be improper to create an exception for oil drilling because the Wage Order already has specific exceptions for particular industries, and the work performed by plaintiff is analogous to the low-skilled work performed by other employees subject to the Wage Order. *Id*. at 7-

8; *see also* 7 Colo. Code Regs. § 1103-1:6(c) (Ski Industry).[3]

The Court agrees with defendant that it is not in the Commercial Support Service industry. Like the definition of "Food and Beverage" industry, the definition of the Commercial Support Service industry must be read "as a whole." *Butterball*, 644 F.3d at 1144. The Commercial Support Services industry is limited to "any business or enterprise engaged directly or indirectly in providing services to other commercial firms through the use of service employees who perform duties such as: clerical, keypunching, janitorial, laundry or dry cleaning, security, building or plant maintenance, parking attendants, equipment operations, landscaping and grounds maintenance." 7 Colo. Code Regs. § 1103-1:2. One aspect common to all of the jobs or services listed in the Wage Order's definition of Commercial Support Service is that the employees perform routine, everyday tasks that larger employers often farm out to other companies. *See Cartier v. W. Elec. Coordinating Council*, No. 14-cv-0079-WJM-MJW, 2015 WL 3581346, at *5 (D. Colo. June 9, 2015) ("Although the Court does not take the definition's list of specific occupations to be exclusive, the Court cannot ignore the common theme. All perform relatively low-skilled sorts of work that companies often 'farm out' to vendors."). While defendant contracts with other companies, it is for a

---

[3] Plaintiff argues that defendant has a heightened burden to establish it is "plainly and unmistakably" exempted, Docket No. 18 at 4, but the higher burden is related to employers attempting to show their employees are subject to the exemptions in the Fair Labor Standards Act, not the Wage Order. *Bowe v. SMC Elec. Prods., Inc.*, 935 F. Supp. 1126, 1132 (D. Colo. 1996), *opinion adhered to on reconsideration*, 945 F. Supp. 1482 (D. Colo. 1996). Further, defendant does not argue that it is subject to the exemptions in the Wage Order. *See* 7 Colo. Code Regs. §§ 1103-1:5 (Administrative Employee, Executive or Supervisor, Professional, and Outside Salesperson); 1103-1:6 (Salespersons, parts-persons, and mechanic; Commission Sales; Ski Industry; and Medical Transportation).

discrete task that is contracted out due to its specialized, not its routine, nature. Plaintiff's reliance on the low-skilled nature of his work as a roughneck and his operation of equipment in that role is unavailing because the Wage Order applies based on industry, not the type of work an individual worker performs.  7 Colo. Code Regs. § 1103-1:1.  Consequently, in analyzing whether the Wage Order applies to a particular employer, courts look to whether the employer's operations fit the industry definition, not whether any of the company's employees perform services that may be supplied in a particular industry.  *Butterball*, 644 F.3d at 1143-44.

Plaintiff focuses on the term "equipment operations," which is one of the examples listed in the definition of Commercial Support Services, and claims that he "operate[d] drilling equipment" and therefore works in the Commercial Support Services industry.  Docket No. 18 at 5.   Even if "equipment operations" is ambiguous, despite appearing in a list of presumably similar types of jobs, other information from the Department of Labor shows that the definition of Commercial Support Services does not cover all businesses that employ equipment operators for contract work.  A Fact Sheet from the Department of Labor regarding Colorado Minimum Wage Order 32 (revised December 2015) indicates that the Wage Order does not apply to "a variety of other industries such as construction, manufacturing, [and] wholesale."  Docket No. 17-2; *see also Butterball*, 644 F.3d at 1144 (relying on the Fact Sheet's statement that the Wage Order does not apply to "construction, manufacturing, wholesale" to reject a claim that the Wage Order applied to wholesale food manufacturers).  The Court agrees with defendant that the services it performs are analogous to those in the construction industry that involve the performance of a discrete, specialized task on a

contract basis, similar to a construction firm completing a portion of a building or structure and, once finished, moving on to a different task or a different construction site. While construction workers operate equipment and construction companies can work on a contract basis for commercial enterprises, the Fact Sheet makes clear that the Department of Labor nonetheless does not interpret the Wage Order as applying to the construction industry. *See* Docket No. 17-2. Thus, even if "equipment operations" is ambiguous and such ambiguity renders the definition of "Commercial Support Services" ambiguous, extrinsic evidence in the form of the Fact Sheet supports defendant's interpretation that defendant is not in the Commercial Support Services industry, but instead is in one of the "variety of other industries" to which the Wage Order does not apply. Docket No. 17-2. Therefore, the Wage Order does not apply to plaintiff's job and the Court will enter summary judgment on plaintiff's claim under the Wage Order.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendant Xtreme Drilling and Coil Services, Inc.'s Motion for Partial Summary Judgment [Docket No. 17] is **GRANTED**. It is further

**ORDERED** that plaintiff's first claim for relief is dismissed.


DATED March 8, 2017.

                                       BY THE COURT:

                                       s/Philip A. Brimmer
                                       PHILIP A. BRIMMER
                                       United States District Judge