IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 16-cv-00249-PAB-SKC

JOSE BLANCO, on behalf of himself and all similarly situated persons,

    Plaintiff,

v.

XTREME DRILLING AND COIL SERVICES, INC., a Texas corporation,

    Defendant.

## ORDER

This matter is before the Court on the Joint Motion for Final Approval of Class Action Settlement [Docket No. 58].  The Court has jurisdiction pursuant to 28 U.S.C. §1331.

## I. BACKGROUND

This case arises out of a wage dispute.  Defendant is an oilfield drilling company.  Docket No. 1 at 2, ¶ 5.  Plaintiff claims that he and other similarly situated employees of defendant were not paid full compensation for overtime hours worked and failed to receive paid rest breaks required by state law.  *Id*. at 2-3, ¶ 7.

Plaintiff filed a class action complaint on February 2, 2016.  *Id*.  Plaintiff asserts claims for violation of the Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101, *et seq*., the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101, *et seq*., and breach of contract.  *Id*. at 4-5, ¶¶ 10-24.  On March 8, 2017, the Court granted defendant summary judgment on plaintiff's Colorado Wage Claim Act Claim.  Docket No. 24.  On

March 29, 2019, the parties filed a joint motion for preliminary approval of a class action settlement. Docket No. 48. Acting with the consent of the parties, Magistrate Judge S. Kato Crews granted the motion on March 8, 2020 and approved the parties' plan to disseminate notice of the settlement to the class members. Docket No. 52. On May 26, 2020, the parties moved for final approval of the class action settlement, including an award of attorney's fees and costs to plaintiff's counsel. Docket No. 58. The Court held a final fairness hearing on June 19, 2020. Docket No. 60.

## II. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Overview of the Settlement Agreement

The proposed settlement agreement defines the settlement class as:

> all non-exempt drilling employees of [defendant] who were based in Colorado, worked at any time between February 2, 2013 and January 24, 2019, and who received additional payments for bonuses, [o]il-based mud payments, training pay, or per diems that were not included in the calculation of such employee's regular rate of pay.

Docket No. 48-1 at 1, ¶ II.A. Under the proposed settlement agreement, defendant agrees to pay a total of $850,000.00. *Id.* at 5-6, ¶ IV.E.1. The settlement funds are to be distributed as follows: (1) service award of 24,000.00 to plaintiff; (2) payments to class counsel of up to 38 percent of the settlement amount, which equals $323,000; (3) payment of class members' payroll taxes; and (4) pro rata payments to settlement class members of all remaining funds based on a formula set out in the settlement agreement to be calculated by the settlement administrator. *Id.* at 5-7, ¶ IV.E.

### B. Notice to the Settlement Class

Under Rule 23(e)(1), a district court approving a class action settlement "must

direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Rule 23(c)(2)(B) provides, in relevant part, that for "any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). In addition to the requirements of Rule 23, the Due Process Clause also guarantees unnamed class members the right to notice of a settlement. *DeJulius v. New England Health Care Emps. Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005).  However, due process does not require that each class member receive actual notice to be bound by the adjudication of a representative action.  *Id*.  Instead, the procedural rights of absent class members are satisfied so long as "the best notice practicable under the circumstances [is given] including individual notice to all members who can be identified through reasonable effort."  *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1110 (10th Cir. 2001) (citation omitted).  Thus, "[t]he legal standards for satisfying Rule 23(c)(2)(B) and the constitutional guarantee of procedural due process are coextensive and substantially similar."  *DeJulius*, 429 F.3d at 944.

The Court finds that the parties complied with the notice plan that was approved by the Court in its ruling on the parties' motion for preliminary approval of the class action settlement.  *See* Docket No. 52 at 5-6.  The settlement administrator mailed a notice of preliminary approval to each of the 349 settlement class members.  Docket No. 58-1 at 2, ¶ 5.  Fifty-eight of those mailings were undeliverable; the settlement administrator conducted further research and re-mailed the notice to forty-eight class

members. *Id.*, ¶ 6. Seven of those mailings were returned as undeliverable. *Id.* In total, seventeen class members did not receive notice. *Id.*

Consistent with its prior order, the Court finds that the parties made reasonable efforts to identify and provide notice to all class members who would be bound by the settlement. *See* Fed. R. Civ. P. 23(e)(1) (requiring court to "direct notice in a reasonable member to all class members who would be bound by the proposal"); *Tennille v. W. Union Co.*, 785 F.3d 422, 438-39 (10th Cir. 2015) (finding that mailing of settlement notice to addresses updated through post office's change-of-address database was sufficient under Rule 23 and due process*); DeJulius*, 429 F.3d at 944 (noting that due process inquiry "focuses upon whether the district court gave the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort" (internal quotation marks omitted)). Moreover, the notice itself contained information regarding the nature of the lawsuit, the definition of the class, class members' anticipated recovery under the settlement, the amount of attorneys' fees and costs sought, and a summary of the class members' legal rights, including the right to object or exclude themselves from the settlement. *See* Docket No. 48-1 at 13-17; *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing information to be included in notice). The notice also directed class members to a phone number to call for additional information regarding the settlement. *See* Docket No. 48-1 at 17; *see also Tennille*, 785 F.3d at 437 (finding that "notice satisfied due process by informing class members of several ways they could obtain information about the claims that they would be releasing if they joined the settlement").

Based on the foregoing, the Court is satisfied that the notice provided to class members met the requirements of Rule 23(e) and due process.

### C. Analysis of Rule 23 Factors[1]

Rule 23(e) provides that a proposed settlement may only be approved after a "finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In this process, "trial judges bear the important responsibility of protecting absent class members," and must be "assur[ed] that the settlement represents adequate compensation for the release of the class claims." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 349 (3d Cir. 2010); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (noting that the Rule 23(e) inquiry "protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise") (citations omitted). To determine whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). If the settling parties can establish

---

[1] Magistrate Judge Crews previously found that certification of the proposed class was appropriate for purposes of the parties' settlement. Docket No. 52 at 6. The Court incorporates that finding herein.

these factors, courts usually presume that the proposed settlement is fair and reasonable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (applying an "initial presumption of fairness" to a proposed settlement where: (1) it was the result of arm's length negotiations; (2) it was based on sufficient discovery; (3) "the proponents of the settlement [were] experienced in similar litigation; and (4) only a small fraction of the class objected").

With regard to the first factor, the Court finds no evidence of collusion. This case has been pending for over four years, during which time the parties have briefed several motions and engaged in formal discovery, including written discovery and depositions. *See* Docket No. 58 at 6-7; Docket No. 17 (defendant's motion for partial summary judgment); Docket No. 25 (plaintiff's motion for reconsideration). The parties proceeded to mediation only after both parties completed significant work, enabling them to understand the strengths and weaknesses of plaintiff's claims. *See* Docket No. 58 at 7. Based on the information provided, the Court is satisfied that the parties' settlement is the product of fair and honest negotiations. *See Reiskin v. Reg'l Transp. Dist. Colo.*, No. 14-cv-03111-CMA-KLM, 2017 WL 5990103, at *2 (D. Colo. July 11, 2017) (finding that class settlement was fairly and honestly negotiated where "case involved intensive discovery," "expert witness reports," depositions, and "[n]umerous motions").

The Court also finds that there are serious questions of law and fact in this case that likely would have affected the class members' chance at recovery. Defendant believes that it properly calculated its employees' overtime pay. *See* Docket No. 58 at

8. Defendant also believes that plaintiff would not be able to obtain class certification if the case proceeded. *See id*. In addition, the parties dispute several issues related to damages, such as which statute of limitations applies and to what extent state law penalties and/or liquidated damages would be available. *See id*. at 8-9. Given the real prospect that the plaintiff class would not have obtained any recovery had the case proceeded to trial, the Court finds that this factor weighs in favor of approving the parties' settlement agreement.

The Court next considers whether the value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation. The parties indicate that continued litigation would lead to motions practice, trial, and an appeal. *See* Docket No. 58 at 10. Under the parties' settlement agreement, class members will receive a pro rata share of $850,000, less attorney's fees and other adjustments. *See* Docket No. 48-1 at 5-7, ¶ IV.E. Given the risks and costs of protracted litigation and uncertainty surrounding class members' ability to recover, the Court finds that the immediate recovery provided for in the parties' settlement agreement outweighs the possibility of greater future relief.

The fourth factor also weighs in favor of final approval of the parties' settlement. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Hapka v. CareCentrix, Inc.*, 2018 WL 1871449, at *5 (D. Kan. Feb. 15, 2018) (quoting *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006)). Here, class counsel has extensive experience representing plaintiffs in wage and hour law cases and in class actions. *See* Docket No. 58-2. In their joint motion, counsel for both sides

state that they believe that the settlement is "more than fair and reasonable" and, in the view of class counsel, "represents an outstanding result" for the class. See Docket No. 58 at 11.

Finally, no class members objected to the settlement, and just two out of 349 class members requested exclusion from the settlement. See Docket No. 58-1 at 3, ¶¶ 8, 10. Class members' apparently positive response to the settlement is further evidence that it is fair, adequate, and reasonable. See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 118 (2d Cir. 2005) (noting that the fact that "only a small number of objections are received . . . can be viewed as indicative of the adequacy of the settlement" (internal quotation marks omitted)).

Based on the foregoing, the Court concludes that the settlement is "fair, reasonable, and adequate," and will grant final approval of the settlement agreement.

## III. ATTORNEY'S FEE AWARD

Class counsel request an award of attorney's fees and costs in the amount of $323,000, which is 38 percent of the settlement amount. See Docket No. 48-1 at 6, ¶ IV.E.2.a. The FLSA entitles a prevailing plaintiff to recover "a reasonable attorney's fee . . . and costs of the action." Gray v. Phillips Petroleum Co., 971 F.2d 591, 594 (10th Cir. 1992) (quoting 29 U.S.C. § 216(b)). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (internal citation omitted).

In common fund cases, the Tenth Circuit has "recognized the propriety of

awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis."[2] *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993); *accord Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) (holding that, although either method is permissible in common fund cases, "*Uselton* implies a preference for the percentage of the fund method"). Because this is a common fund case and because plaintiff's fee request is for a percentage of the common fund, the Court will evaluate the attorney's fees award using the percentage of the fund approach. *See Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) (distinguishing common fund and statutory fees cases).

The "percentage reflected in a common fund award must be reasonable [and] the district court must 'articulate specific reasons for fee awards.'" *Brown*, 838 F.2d at 454 (quoting *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983)). In determining the reasonableness of a percentage award, courts must apply the *Johnson* factors, which are:

> (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) any prearranged fee-this is helpful but not determinative; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[2] The lodestar amount is calculated based upon "the total number of hours reasonably expended multiplied by a reasonable hourly rate – and then adjust[ing] the lodestar upward or downward to account for the particularities of the suit and its outcome." *Zinna v. Congrove*, 680 F.3d 1236, 1239, 1242 (10th Cir. 2012) (quotation marks omitted).

*Id.* at 454-55 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974); *see also Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 455-56 (10th Cir. 1988) ("The court here clearly considered all of the relevant *Johnson* factors and applied them appropriately."). Thus, in evaluating the reasonableness of a fee award, a court need not specifically address each *Johnson* factor. *Gudenkauf v. Stauffer Commc'ns, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998). The Court finds that the factors relevant in this case weigh in favor of approving the requested fee award.[3]

### A.  Time and Labor Required

Class counsel represents that he has spent over four years and approximately 230 hours litigating this case. *See* Docket No. 58 at 18-19. As part of the litigation, counsel conducted motions practice and discovery before participating in mediation. *See id.* at 7, 19. Given the substantial amount of time and labor invested in this case by class counsel, the Court finds that the time and labor factor weighs in favor of the requested fee award.

### B.  Novelty and Difficulty of the Questions Presented

Class counsel represents that the case involved complex employment law issues, as well as difficult questions relating to class certification, which he had to consider in evaluating the risks of proceeding to trial and in negotiating a settlement. *See* Docket No. 58 at 19. This factor therefore weighs in favor of the requested award. *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1150 (D. Colo.

---

[3] The seventh and eleventh *Johnson* factors are not relevant in this case. *See Brown*, 838 F.2d at 455-56 ("[R]arely are all of the *Johnson* factors applicable; this is particularly so in a common fund situation.").

2009) (noting that, although the area of law was not novel, the difficulty and complexity of the issues in the case supported a "generous award of attorney fees").

### C.  Skill Required and Experience of Plaintiff's Counsel

The Court considers the third and ninth *Johnson* factors together. *See, e.g.*, *id.* (noting that the second, third, and ninth *Johnson* factors are closely related). As evidenced by his declaration, class counsel has extensive experience representing plaintiffs in both wage and hour cases and in class action lawsuits. *See* Docket No. 58-2 at 1, ¶ 3. Accordingly, class counsel was well equipped to address the unique challenges that defendant's anticipated defenses posed to the ability of the plaintiff class to recover in this case. Class counsel successfully negotiated a structured settlement that provides meaningful recovery for the plaintiff class. The "skill" and "experience" factors therefore weigh in favor of the requested fee award.

### D.  Preclusion of Other Employment

"Attorneys attempting to handle a large class [in FLSA cases] are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case." *Whittington v. Taco Bell of America, Inc.*, No. 10-cv-01884-KMT-MEH, 2013 WL 6022972 at *6 (D. Colo. Nov. 13, 2013). Class counsel represents that he spent significant hours on this case on a contingent fee basis. *See* Docket No. 58 at 19-20. The Court finds that the handling of this case precluded other work, and therefore the fourth factor weighs in favor of the requested fee award.

11

### E.  The Customary Fee/Awards in Similar Cases

The Court considers factors five and twelve together.  Courts in this district have recognized that "[t]he customary fee to class counsel in a common fund settlement is approximately one-third of the economic benefit bestowed on the class." *Anderson v. Merit Energy Co.*, No. 07-cv-00916-LTB-BNB, 2009 WL 3378526, at *3 (D. Colo. Oct. 20, 2009); see also *Shaw v. Interthinx, Inc.*, No. 13-cv-01229-REB-NYW, 2015 WL 1867861, at *6 (D. Colo. Apr. 22, 2015) (citing cases holding that fees within the 20-50% range are "presumptively reasonable"); *Brody v. Hellman*, 167 P.3d 192, 203 (Colo. App. 2007) (collecting cases approving percentage fees ranging from 24% to 36% of the common fund).  Plaintiff's counsel in this case seeks $323,000 in attorney's fees and costs, or 38% of the total settlement amount.  The Court finds this amount to be in line with the customary fees and awards in similar cases.  The fifth and twelfth *Johnson* factors therefore weigh in favor of approval.

### F.  Fixed or Contingent Nature of the Fee

While the parties have not presented any evidence of a prearranged fee, class counsel undertook the representation on a contingency basis.  Docket No. 58 at 19-20.  Courts have consistently found that this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award.  *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8; *Farley v. Family Dollar Stores, Inc.*, No. 12-cv-00325-RM-MJW, 2014 WL 5488897, at *4 (D. Colo. Oct.

30, 2014).[4]

### G.  Amount Involved and the Results Obtained

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted).  Here, class counsel recovered $850,000 on behalf of 349 settlement class members.  *See* Docket No. 48-1 at 5, ¶ IV.E.1.  Class counsel obtained this result despite serious questions as to whether the class could be certified under Fed. R. Civ. P. 23, whether the class could ultimately prevail on the merits of its claims, and what amount of damages would be available.  Given the risks involved, the Court finds that the relief provided by the settlement represents an excellent result for the settlement class.  *See Brown*, 838 F.2d at 456 (finding that the results obtained by the settlement "may be given greater weight [in the *Johnson* analysis] when . . . the trial judge determines that the recovery was highly contingent and that the efforts of counsel

---

[4] While courts have consistently interpreted this factor as an inquiry into the fixed or contingent nature of the fee arrangement, the Supreme Court has indicated that "a careful reading of *Johnson* shows that the contingency factor was meant to focus judicial scrutiny solely on the existence of any contract for attorney's fees which may have been executed between the party and [the] attorney." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723 (1987) (plurality op.), *abrogated in part on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).  However, even if this factor is interpreted as focusing on the specific fee quoted to plaintiff at the outset of the litigation, the Court finds that the apparent absence of any prearranged fee weighs in favor of the requested award.  *See id.* ("The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." (internal quotation marks omitted)); *Johnson*, 488 F.2d at 718 (indicating that fee amount agreed upon at outset of litigation is a factor to be considered in determining reasonableness of requested fee); *Brody*, 167 P.3d at 200-01 (finding that *Johnson* factors weighed in favor of fee award where "there was no prearranged fee other than an understanding the fee would be contingent on the outcome").

were instrumental in realizing recovery on behalf of the class"); *Tennille v. W. Union Co.*, No. 09-cv-00938-JLK-KMT, 2014 WL 5394624, at *4 (D. Colo. Oct. 15, 2014) (recognizing that prospective relief contributes to the "real and actual value" of a settlement). Accordingly, the eighth *Johnson* factor strongly supports the requested fee award.

### H.  The Undesirability of the Case

Class counsel states that the time, effort, and complexity of the issues involved in this case would make it undesirable to many attorneys. *See* Docket No. 58 at 20. Class counsel represents that the case required a significant time commitment on a contingent basis, and that counsel's firm incurred $4,715 in costs related to the litigation. *See id.*; Docket No. 58-2 at 4, ¶ 10. The Court agrees that counsel's time spent and out-of-pocket costs was not an insubstantial burden, given the significant risk that the plaintiff class would be unable to obtain any recovery from defendant. The relative undesirability of this case therefore weighs in favor of the requested fee award. *See In re Qwest*, 625 F. Supp. 2d at 1152-53 (finding that risk borne by lead counsel was key factor in assessing desirability of the case).

### I.  Lodestar Crosscheck

Courts evaluating the reasonableness of a percentage fee award will often crosscheck the requested fee with the lodestar amount. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8; *see also Brody*, 167 P.3d at 201 (noting that, "[t]ypically, courts use the percentage method and then crosscheck the adequacy of the resulting fee by applying the lodestar method"). Class counsel seek $323,000 in attorney's fees and costs for

approximately 230 hours spent on the litigation. The requested fee reflects a 2.55 multiplier on counsel's $123,000 lodestar amount.

The Court finds the number of hours expended on this case to be reasonable given that the litigation has been ongoing since 2016 and has involved multiple motions, extensive discovery, and settlement negotiations.[5] The hourly rate charged by class counsel of $550 per hour is also generally consistent with the rates charged in other cases in this district. *See Shaw*, 2015 WL 1867861, at *8 (approving of hourly rates ranging from $150 to $675 per hour for attorneys and staff members involved in litigation). Further, the 2.55 multiplier is within the range of lodestar multipliers that have been approved in other class action cases in this District. *See, e.g.*, *Shaw*, 2015 WL 1867861, at *8 (finding lodestar multiplier of 1.37 to be "significantly lower than lodestar multipliers that Colorado federal courts and other courts consistently have approved in other class action cases"); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2012 WL 4069295, at *2 (D. Colo. Sep. 14, 2012) (collecting Colorado federal district court cases approving lodestar multipliers ranging from 2.5 to 4.6). Accordingly, the lodestar crosscheck supports the reasonableness of the requested fee.[6]

---

[5] Although class counsel has not submitted detailed billing records, the Colorado Court of Appeals has stated that, when "the lodestar method is used as a mere crosscheck of the percentage method, the court does not need to scrutinize exhaustively the hours documented by counsel." *Brody*, 167 P.3d at 204.

[6] The motion requests that the Court find that the settlement administrator costs, represented to be $8,529, are reasonable. Docket No. 58. The parties, however, do not explain why approval of the settlement administrator costs is required under either applicable law or the settlement agreement. *See* Docket No. 48-1 at 6, ¶ IV.E.5 (settlement agreement stating that the "full cost of settlement administration . . . will be paid from the Gross Settlement Amount"). In the Court's experience, approval of the

15

## IV. INCENTIVE FEES

The settlement provides for an "enhancement" payment of $24,000 for the class representative. Docket No. 48-1 at 6, ¶ IV.E.3. "[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed – their time and effort invested in the case." *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017). "The award should be proportional to the contribution of the plaintiff." *Id.* No member of the settlement class has objected to the payment, which was disclosed in both the settlement agreement and the notice sent to class members. *See* Docket No. 48-1 at 6, ¶ IV.E.3, and at 14. The enhancement payment is somewhat higher than the amount of service awards that the Court has approved in other cases. *See Pliego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding that $7,500 service award was "appropriate and . . . commensurate with awards in similar cases"); *Aragon v. Clear Water Prods., LLC*, No. 15-cv-02821-PAB-STV, 2018 WL 6620724, at *8 (D. Colo. Dec. 18, 2018) (approving $7,000 service award for the class representative). However, class counsel represents that, by coming forward with the case, the class representative ran the risk that he would be retaliated against or blackballed by employers in the oil and gas industry. *See* Docket No. 58 at 23. Based on the information provided by class counsel and the fact that this case has been pending for over four years, the Court concludes that the enhancement payment is reasonable compensation for the named

---

settlement administrator's costs is not commonly requested or required. Further, the parties' request is not supported by any documentation. Accordingly, the Court denies that portion of the motion and declines to find that such costs are reasonable.

plaintiff's participation in the lawsuit.

## VI. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Joint Motion for Final Approval of Class Action Settlement [Docket No. 58] is **GRANTED IN PART** and **DENIED IN PART**.

The Court will issue a separate order setting forth the terms of the judgment.

DATED July 17, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge